# ARIVACA LAND AND CATTLE COMPANY *v.* UNITED STATES.

## APPEAL FROM THE COURT OF PRIVATE LAND CLAIMS.

No. 153. · Argued January 29, 1902.—Decided March 24, 1902.

The decree of the Court of Private Land Claims denying confirmation of the grant involved in this case, on the ground of uncertainty, affirmed.

Claims to *demasias*, the conditions to acquiring which were unperformed at the time of the date fixed in the Gadsden treaty, are not open to confirmation by the Court of Private Land Claims.

THE statement of facts is contained in the opinion of the court.

The case was argued with No. 40, *Ainsa* v. *United States*, *ante*, 639, and by the same counsel.

MR. CHIEF JUSTICE FULLER delivered the opinion of the court.

This was a petition filed March 1, 1893, for the confirmation of a grant situated in Arizona, containing, according to a survey made on petitioner's behalf, 26,508.06 acres. February 13, 1899, an amended and supplemental petition was filed, praying that if there were found to be an overplus, petitioner should be allowed to pay for such excess and costs, which it offered to do as soon as the same were ascertained, and it tendered $300 in

gold as payment for overplus and $200 for costs.  The Court
of Private Land Claims rejected the grant because there was
"such uncertainty as to the land which was intended to be
granted that it is impossible now to identify it."  Two justices
dissented, being of opinion that the claim should be confirmed
for two sitios.

A titulo was introduced in evidence, (in the surveyor general's
office, produced from private custody,) and this showed that on
June 2, 1833, Ygnacio and Tomas Ortiz, asserting themselves
to be sons and heirs of one Augustin Ortiz, petitioned the alcalde
of Tubac, stating that in 1812 their deceased father paid into the
treasury of the capital of Arispe seven hundred and forty-seven
dollars and three reals, as the highest bid, for which two sitios of
land for raising cattle were sold to him at public auction in the
place called Aribac, and that they were "ignorant as to who was
the surveyor or where the expediente containing the measure-
ments, appraisement and auctions is now," and asking that the
depositions of three witnesses be taken as to the settlement and
possession of the land from 1812 and the landmarks and boun-
dary lines.  The alcalde proceeded to take the depositions of
three witnesses, who deposed in substance that the Aribac ranch
had been settled and occupied by Ortiz and his sons from 1812 to
that time, and that the landmarks were "the one towards the
north on the high pointed hill (devisadero) that rises on this side
of the Tagito mine and borders on the Sierra de Buena Vista;
the one towards the south standing on this side of the Longo-
rena mine on a low hill next to the cañon covered with trees ;
the one towards the east standing up the valley from the spring
on a mesquite tree that has a cross cut in it and borders on the
Sierra de las Calaberas; and the one towards the west standing
at the Punta de Agua on a pointed hill (devisadero) opposite
the Sierra del Babuquivari."  These depositions were taken
*ex parte*, no representative of the Government having been noti-
fied or participating.

Ygnacio and Tomas then petitioned the treasurer general of
Sonora to issue them a grant, "the original expediente containing
the measurements having perhaps been lost," transmitting "the
documents by which they show their right of property to two

sitios of land for raising cattle, which in the year 1812 were sold at public auction to their deceased father, Don Augustin Ortiz, from whom they inherited the same, which land is situated in the place called Aribac, and that the price at which it was sold and other imposts thereon have been paid." Besides the depositions, the titulo set forth a certificate by the treasurer of Arispe, dated June 18, 1833, to the effect that " on page 85 of the manual book corresponding to the year 1812," an entry was found, under date of October 10, signed by Bustamente, Romo and José Carrillo, that Don Augustin Ortiz by Carrillo, as his attorney, had paid into the royal treasury seven hundred and ninety-nine dollars, five reals, and nine grains, for two sitios of land for raising cattle recently sold to him at auction. The petition of the alcalde, his order to take testimony, the three depositions, the certified entry, and the petition to the treasurer general, were then referred by the latter to the governor of Sonora for action. The governor, reciting that " the possessory right of citizens Tomas and Ygnacio Ortiz has been legally proved," ordered that the grant be made in accordance with the law. June 24, 1833, Mendoza as treasurer general of Sonora directed that the grant for two sitios of land for raising cattle which comprise the place called Aribac, be issued, and that the grantees pay into the treasury the value of the title in conformity with the laws, which was apparently done; and Mendoza issued the grant " of two sitios of land for raising cattle and horses, which comprise the place called Aribac," and declared that the expediente should remain in the archives of the office " as a perpetual record." On the titulo was endorsed: " This title is recorded on page 15 of the proper book which exists in this treasury general;" and also the certificate of the entry in the manual book of July 12, of the receipt of $30 as the value of the land title for two sitios of land. The petitioner also introduced the following entry in the book of Toma de Razon in the office at Hermosillo, Sonora: " On the 12th of July there was issued to Captain Don Ygnacio Gonzales the title granted on the 2d of July, of the corresponding year, to two sitios of land for raising cattle and horses, which comprise the place named Aribac, situated in the juris-

diction of Pimeria Alta, in favor of the citizens Tomas and Ygnacio Ortiz, residents of the presidio of Tubac."

The expediente of 1812 was not in the archives; the alleged entry of October 10, 1812, copied in the titulo, was not there; the expediente of 1833 was not there; no survey was there. The entry of October 10, 1812, stated that the two sitios comprised " the old and depopulated town or settlement called Aribac." The depositions gave as landmarks " the one towards the north on the high pointed hill that rises on this side of the Tagito mine and borders on the Sierra de Buena Vista; the one towards the south standing on this side of the Longorena mine on a low hill next to a cañon covered with trees; the one towards the east standing up the valley from the spring on a mesquite tree that has a cross cut in it and borders on the Sierra de las Cabaleras; and the one towards the west boundary standing at the Punta de Agua on a pointed hill opposite the Sierra del Babuquivari."

We have carefully examined and considered the testimony in respect of these descriptive calls given on the trial, and concur in the judgment of the court below that the land cannot be so identified as to admit of confirmation. We are constrained to conclude that adequate certainty is lacking. Not only so in respect of the outboundaries, but this was a grant by quantity, a grant of two sitios only, and where situated in the larger area claimed cannot be satisfactorily determined. The record contains no original survey or field notes; and there is no certainty as to an initial point or center.

It appears that a preliminary survey of two sitios was made in 1881 for the surveyor general of Arizona, but we think from the evidence of the surveyor who made it that his location of the tract was essentially arbitrary. Indeed, he admitted that his survey " did not pretend to conform to the natural objects called for," and testified : " I surveyed the two leagues of land. It was left a good deal to me. They wanted it for cattle raising in that valley. I used my own judgment as to where to locate it."

But the court was not called on to speculate on the subject or to accept the theories of the surveyor as to the best place

for cattle raising as controlling. The doctrine of the *Ely case*, 171 U. S. 220, was not that it was within the power of the court to locate grants, but that if a location had been made, and there were facts enough to nail it to the ground, and determine its true boundaries, that might be done. The data did not exist here for the application of that principle.

The Gadsden treaty provided that grants made previously to September 25, 1853, were not to " be respected or be considered as obligatory, which have not been located and duly recorded in the archives of Mexico." We are of opinion that this grant of two sitios is not shown, and cannot be presumed, to have been located within the intent and meaning of the treaty. No question, therefore, could be raised in respect of *demasias*, and, moreover, as just held in *Reloj Cattle Company* v. *United States*, *ante*, 624, under the laws on that subject, the owner of the *cabida legal* did not have a vested property interest in the *demasias*, but, under circumstances, had the preference in acquiring it, if he so desired; and claims to overplus, the conditions to acquiring which were unperformed, were not open to confirmation by the court.

*Decree affirmed.*